# Strawn *versus* Shank.

1. In a suit upon a mortgage by an assignee of the mortgagee, the mortgagee is not a party to the record within the Act of March 27th, 1865, (P. L. 38,) or the second section of the Act of April 15th, 1869, (P. L, 30,) although the suit is brought by the plaintiff as assignee of the mortgagee by name.

2. In a suit by an administrator of the assignee of a mortgagee, who, in the assignment, has guaranteed to his assignee the payment of the bond secured by the mortgage, such mortgagee is a competent witness for the defendant to show that he, the mortgagee, received the principal of the mortgage under authority from his assignee, and, the assignment to plaintiff's decedent not having been recorded, satisfied the mortgage in his own name. Such testimony is against the interest of the witness and therefore admissible.

3. The assignee of a mortgagee may sue upon the mortgage in his own name and if he sues as " assignee " the words are mere surplusage.

4. If a judge in charging the jury states substantially the language of a witness, a failure to repeat the words of the witness is not error.

May 1st, 1885. Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., absent.

ERROR to the Court of Common Pleas of *Bucks county:* Of January Term 1885, No. 446.

Scire facias sur mortgage, by Joel W. Strawn, assignee of Levi L. Jacoby, against Ephraim Shank, with notice to Franklin T. Romig, John S. Romig, David T. Romig, William Kruger, Edwin Kiser, Jacob Sumstone and Magdalena Ruth, terre-tenants. The death of the plaintiff having been suggested of record Eli W. Strawn his administrator was substituted as plaintiff.

The suit was brought on a mortgage made by Ephraim

Shank to Levi L. Jacoby dated March 16th, 1874. Judgment was taken against the mortgagor for want of an appearance. The terre-tenants pleaded payment.

On the trial, before YERKES, P. J., the plaintiff offered in evidence the bond and mortgage, the assignment by Levi L. Jacoby to Joel W. Strawn, dated March 29th, 1877, recorded May 23d, 1883, the record of the mortgage, and the administration bond book showing the grant of letters of administration to him, and rested. In the assignment of the bond to Joel W. Strawn, Jacoby guaranteed to him the payment of the principal and interest thereof. The defendants then called Levi L. Jacoby as if under cross examination and offered to prove by him, that after the assignment by him to plaintiff's decedent, he acted as agent of Joel W. Strawn his assignee, in receiving annually from the mortgagor the interest on the mortgage; that afterwards, the mortgaged real estate was sold by the mortgagor's assignees for creditors; that the purchaser having given notice that he would pay off this lien Joel W. Strawn told him to get the money and keep it himself, and pay him, Joel W. Strawn, interest; that witness received the money, and Joel W. Strawn not having then recorded his assignment, it was treated as a nullity, and witness entered satisfaction of the mortgage with the knowledge of Joel W. Strawn; that witness retained the money, paying interest on it to Joel W. Strawn until he himself failed.

Plaintiff objected to any testimony from this witness in relation to anything that occurred during the life of Joel W. Strawn. Objection overruled. Exception. (First assignment of error.)

The witness then after stating the facts substantially as in the offer, testified, inter alia, as follows:—

"After the property was sold the party that bought it told me that part if not all of that mortgage would be paid; that was the Romig party; they are defendants in this case now. I went to Mr. Strawn and told him that the property was sold and that part of that mortgage, if not all, I did not think more than half, would not make a promise for more than half of it; it would be paid off and would be paid to him. Then Mr. Strawn said: 'Mr. Jacoby, I wish thee would keep that money as I have no use for it.' That was the first time, so I informed him the second time how it was to be paid back. I told him the same, one half of it about would be paid back. He made the same reply: 'I wish thee would keep that money, if thee will keep it I will allow thee to have it at five per cent.'"

The court charged the jury inter alia, as follows:—

And the witness alleges that Mr. Strawn authorized him to receive the money from the mortgagor or purchasers of the

land, and that Mr. Strawn further remarked that he would look to him as the debtor, and that he should keep the money. I instruct you that if Mr. Strawn authorized Mr. Jacoby to collect and receive the money for him, knowing the fact, which Mr. Jacoby alleges he told him, that it was being paid off, and the money was paid to Mr. Jacoby, and he received it by virtue of that authority, then these defendants ought not, and cannot be required to pay the money a second time. (Second assignment of error.)

Verdict for defendants and judgment thereon. Thereupon plaintiff took this writ, assigning for error the admission of evidence of Levi L. Jacoby, and the part of the charge above quoted.

*Henry M. DuBois* and *John L. DuBois* (with whom was *William G. Foulke*), for plaintiff in error.—Jacoby was not a "party" within the second section of the Act of April 15th, 1869, as to make him a competent witness for cross-examination. Under the Act of March 27th, 1865, those persons who could be called as witnesses were parties with an adverse interest to those calling them: Guldin *v.* Guildin, 1 Out., 411. Jacoby would not be liable for costs. Jacoby was interested for the defendants, because a verdict for them would exonerate him from the guarantee given by him.

[TRUNKEY, J. "Did you object to the calling of the witness as if on cross-examination?"

*DuBois:* "Not specifically but substantially."]

Jacoby should have been excluded on the ground of public policy, being the assignor of the mortgage: Graves *v.* Griffin, 19 Pa. St., 176; Clover *v.* Painter, 2 Id., 47; Wolf *v.* Finks, 1 Id., 441; Cambria Iron Co. *v.* Tomb, 48 Id., 394; Tinstman *v.* Croushore, 104 Id., 197; Loomis's Appeal, 105 Id., 258.

As to the second assignment of error: The court did not state the evidence correctly. Jacoby did not say that Strawn authorized him to receive the money. He only said after Jacoby told him the mortgage was to be paid "I wish thee would keep the money." Strawn did not tell him to satisfy the mortgage, nor did Jacoby understand that he was acting as agent.

*George Ross* (with whom were *L. L. James, J. M. Shellenberger* and *Louis H. James*), for defendants in error.—Jacoby's interest was adverse to defendants: Ash *v.* Guie, 97 Pa. St., 493.

Mr. Justice PAXSON delivered the opinion of the court, May 25th, 1885.

The only serious contention in this case is as to the com-

petency of the witness, Levi L. Jacoby. We have no difficulty in reaching the conclusion that he was not a party to the record within the Act of 27th March, 1865, P. L. 38, or the second section of the Act of 15th April, 1869, P. L. 30. Jacoby had assigned the mortgage to Strawn. The latter had the right to sue in his own name without noticing Jacoby. . That he sued as "assignee of Jacoby" is without significance. The words quoted might have been stricken from the record. They were mere surplusage.

Nor has the first section of the Act of 15th April, 1869, any bearing upon the question for the reason that this suit was brought by an administrator, and the witness was the assignor of the mortgage sued upon. His competency must be determined by the law as it stood prior to the passage of either of the above Acts of Assembly.

The objection was not that the witness was incompetent generally. It was limited to his testifying to anything that occurred during the lifetime of Joel W. Strawn. He was admitted to testify that Strawn authorized him to receive from the purchaser of the land the money due on the mortgage; that he did so receive it, and entered satisfaction on the record of the mortgage; that he retained the money with the consent of Strawn and paid him interest thereon. It also appeared that when Jacoby assigned the mortgage to Strawn he guaranteed the payment of the money due thereon.

The most that can be urged against Jacoby's competency is that he was an interested witness. We may safely concede that he was. and yet sustain the ruling of the court below. His legal interest was on the side of the plaintiff, and he was called by the defendant. He was called to testify and did testify directly against his interest. It was to the benefit of the witness that the plaintiff should recover on the mortgage and thus relieve him upon his guarantee. His testimony defeated such recovery and left him liable, either upon his guarantee, or as the debtor of Strawn's estate for the money in his hands. Either way his liability was absolutely fixed by his own evidence.

A party to the record may be called by the adverse party; and if he is willing to testify, may be examined. This was law before the passage of any of the Acts of Assembly above cited, and it is law now. His declarations were always evidence against himself, much more so is his evidence under oath, if he is willing to give it: Solms *v.* McCulloch, 5 Barr, 473; Packer *v.* Noble, 7 Out., 188. Interested witnesses are governed by the same principle. If called to testify against their interest they have always been competent. This is familiar law; Johnson *v.* Ramsey, 16 S. & R., 115;

Hawthorn *v.* Bronson, Id., 269; Quinlan *v.* Davis, 6 Wharton, 169; Ralph *v.* Brown, 3 W. & S., 395; Helser *v.* Pott, 3 Barr, 179. As was tersely said by Chief Justice GIBSON in Ralph *v.* Brown: "A witness may choose to testify against his interest, and who is to prevent him?"

The second assignment alleges that the learned judge erred in not stating correctly the evidence of Mr. Jacoby in his charge to the jury. This is a mere criticism. The learned judge gave the language of the witness substantially. The latter said: "I informed him (Strawn) that I would get the money on this mortgage, and enter satisfaction; he told me of course I should keep the money; he had no use for it, and if I would keep it he would let me have it at five per cent." This fully justified the language of the court.

We find no error in this record.

Judgment affirmed.